Hinckley Chamber of Commerce et al., Appellants, *v.* Hinckley Chamber of Commerce, Inc. et al., Appellees.

(No. 1381 — Decided
August 28, 1985.)

*Richard J. Marco, Jr.,* for appellants.

*James A. Amodio,* for appellees.

GEORGE, P.J.  Plaintiff-appellant, Hinckley Chamber of Commerce, hereinafter referred to as "Hinckley I," appeals the judgment of the trial court denying its request for an injunction against defendant-appellee, Hinckley Chamber of Commerce, Inc., hereinafter "Hinckley II," to prevent Hinckley II from using the name. This court reverses and remands.

Hinckley I was incorporated under the laws of Ohio in 1951 as a nonprofit corporation. It lost its corporate status in 1976 when it failed to file a statement of continued existence, as required by R.C. 1702.59. Nevertheless, Hinckley I continued to operate under its name, Hinckley Chamber of Commerce.

Hinckley II was incorporated on May 7, 1984, taking the name "Hinckley Chamber of Commerce, Inc.," even though its founder, William Kasmarek, was aware of the existence and at least some of the activities of Hinckley I. The purposes of both organizations are basically the same — to promote business and to advance the general welfare of Hinckley Township.

On June 26, 1984, Hinckley I filed a complaint seeking an injunction against Hinckley II's use of the name. In denying the injunction, the trial court found that Hinckley I had lost any proprietary interest it had in the name when it "chose not to protect or reinstate its corporate existence many years ago." The court held that "there [were] no justiciable issues before it, and that the Court [had] no jurisdiction * * *." It denied the injunctive relief sought and dismissed the case.

In its appeal, Hinckley I raises a single assignment of error:

"The trial court erred when it held that the Hinckley Chamber of Commerce, formed in 1951, a non-profit de facto corporation, did not have the legal or equitable right to injunctive relief against the Hinckley Chamber of Commerce, Inc., a corporation formed in 1984, to enjoin the latter from using the name Hinckley Chamber of Commerce."

R.C. Chapter 1702 governing nonprofit corporations provides for the submission of a name when articles of incorporation are filed with the Secretary of State and requires the Secretary of State to reject the articles if the name is misleading to the public or indistinguishable from the name of another corporation. But these statutes are primarily to assist the public in identifying these corporations and do not bestow any substantive rights in the name to the applicant. Such rights are acquired under common law by actual use. *Younker* v. *Nationwide Mut. Ins. Co.* (1963), 175 Ohio St. 1 [23 O.O.2d 285]. In *Younker,* the Supreme Court said at 6-8:

"The rights in trademarks, trade names and service marks are acquired by actual user and not by registration. Such rights belong to the one who first actually adopts and uses the name or mark in connection with his business. * * * The qualified property rights in

such names and marks and the right to protection thereof arise as a matter of common law, not as a matter of statute. The registration statutes merely implement the common-law rights and create certain procedural advantages. * * *

"It is the actual use of the trade name, trademark or service mark in connection with the business and not the duration of such use which gives rise to legal rights. * * * Thus, one who adopts and uses a name in connection with his business or products acquires the right to the use thereof over one who subsequently registers such name or mark. * * *

"* * *

"The controlling question in cases of this nature is whether one has used a name, word, symbol or other means of identification in connection with his business in such manner that the public associates such name, etc., with the particular business or commodity so that the use by another is likely to create confusion in the mind of the public. Consequently, one having a prior use of such name, etc., is entitled to the use of such name, etc., to the exclusion of all others who wish to adopt it. * * *" (Citations omitted.)

The above language was cited with approval by this court in *Countywide Heating & Cooling, Inc.* v. *Horton* (1982), 8 Ohio App. 3d 174. See, also, Celebrezze & Biancamano, Corporate Filings in Ohio: A Procedural Guide (1980), 29 Cleve. St. L. Rev. 179, 210. This name protection is available to nonprofit organizations as well as businesses. *Parma Democratic Club* v. *Democratic Club of Parma, Inc.* (App. 1939), 29 Ohio Law. Abs. 30.

This common-law right may be lost in various ways. For example, the doctrine of laches may bar a claim of common-law protection if there is inexcusable delay between a newcomer's use of the name and the original user's action to enjoin the use. The original user's right may be challenged on grounds that it has not remained faithful to the goals upon which the group was organized. Or it may be argued the use of the name was not continuous, but abandoned, thereby destroying the common-law claim. None of these arguments appears to apply here. The evidence is undisputed that Hinckley I was the first to use the name and that such use has continued for thirty-three years, without interruption, to the time of the hearing. Thus, Hinckley I has established a common-law right to the protection of the name, Hinckley Chamber of Commerce.

Cancellation of Hinckley I's corporate status for failure to file notice of continued existence does not dissolve Hinckley I's common-law right to use of the name. Hinckley II may not rely on the Secretary of State's acceptance of its articles of incorporation, using the same name, as a defense to an action to enjoin use of the name. *Henry Furnace Co.* v. *Kappelman* (1952), 91 Ohio App. 451 [49 O.O. 57]. It is incumbent upon the applicant in choosing a name to act so as not to infringe upon the established legal rights of others. See, generally, 11 Ohio Jurisprudence 3d (1979) 459-465, Business Relationships, Sections 221-223.

A determination that Hinckley I has established a common-law right to the name does not resolve the issue, however. The trial court must still determine whether or not Hinckley I is entitled to injunctive relief and such claim must be demonstrated by clear and convincing evidence. *Countywide, supra,* at 175. The question the trial court must answer is whether or not Hinckley II's unauthorized. use of the name constitutes unfair competition. What is the likelihood that the public will be confused or deceived by Hinckley II's use of the name?

The fact that the names are identical, except for the designation "Inc."

in Hinckley II's name, creates a strong probability of confusion. But there are other factors which may be considered: (1) the geographic area served by the two organizations; (2) the goals set forth in their bylaws; (3) the activities conducted or proposed; (4) the potential membership pool; and (5) the proposed sources of income.

Hinckley I must show a reasonable probability that a real injury, for which there is no adequate remedy at law, exists. Such injury may be to the organization itself, such as through diversion of memberships from it to the other organization, loss of financial resources, or transference of goodwill created in its thirty-three years of service. The injury may be to the public, either through confusion as to which organization the public wishes to support or in deception as to the identity of the two groups. It is not necessary to show actual confusion or deception. It is sufficient for purposes of meeting the injury standard to demonstrate threatened or imminent confusion or deception. *Cleveland Opera Co.* v. *Cleveland Civic Opera Assn., Inc.* (1926), 22 Ohio App. 400.

Hinckley II may counter with evidence that confusion is not likely to result or that it would be insufficient to warrant the drastic remedy of equitable injunction. It may attempt to show that the philanthropic work to be accomplished is more important than that the efforts of any particular group of people be identified as having accomplished it. It may show that the injury to Hinckley II will outweigh any potential or actual injury argued by Hinckley I. Additionally, the court may consider whether or not Hinckley II's appropriation of the name revealed a design to mislead the public or a deliberate effort to benefit from the reputation and goodwill established by Hinckley I.

Although there is evidence in the record concerning potential confusion over the two names and possible injury to both parties, the trial court did not consider these factors in concluding simply that Hinckley I had lost its proprietary interest in the name by failing to protect its corporate existence.

In view of the foregoing, the trial court's judgment is reversed and the case is remanded for a determination of whether or not deception or confusion would arise and, if so, whether it is of a sufficient level to warrant enjoining Hinckley II from the use of the name.

*Judgment reversed*
*and cause remanded.*

QUILLIN and BAIRD, JJ., concur.